

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

*Affirmed by C-173*

JOHN BEN SHEPPERD
ATTORNEY GENERAL

December 18, 1954

Modified and overruled
in part by Carrington v. Ra
U.S. ___ 85 S.Ct. 775
(1965)

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Dear Mr. Calvert:

Opinion No. S-148

Re: Construction of constitutional
amendment adopted November
2, 1954, concerning voting by
members of the armed forces.

You have requested an opinion relating to the construction
and effect of the constitutional amendment adopted November 2, 1954,
amending Sections 1 and 2 and repealing Section 2a of Article VI, Consti-
tution of Texas, concerning voting by members of the armed forces.
Your questions are as follows:

"1. What is the effective date of the Constitutional
Amendment voted upon at the General Election on Novem-
ber 2, 1954, which repeals Section 2a of Article VI and a-
mends Sections 1 and 2 of Article VI of the Texas Consti-
tution?

"2. Does this amendment make any distinction be-
tween members of the regular military establishment of
the United States and officers or enlisted men of the Na-
tional Guard of Texas, the National Guard Reserve, the
Officers Reserve Corps of the United States, or draftees?

"3. If your answer to the second question is in the
negative, will it be necessary for any member of the Armed
Forces of the United States or component branches thereof,
or in the military service of the United States, to pay his
or her poll tax in the county in which he or she resided at
the time of entering such service, so long as he or she is
a member of the Armed Forces?

"4. Do you construe Section 2 to mean that a poll
tax is levied only on persons between the ages of 21 and
60; and that the State poll tax levy will still be $1.50, but
that members of the National Guard will still pay the State
poll tax of $1.00, as referred to in Articles 5840 and
5841?"

A constitutional amendment becomes a part of the Constitu-
tion on the date of the official canvass showing that the amendment re-
ceived a majority vote. Wilson v. State, 15 Tex. Ct. App. 150 (1883); Att'y

Gen. Op. S-146 (1954). The votes of the election held on November 2, 1954, were canvassed on November 19, 1954, and the official canvass showed that the amendment had been adopted. It therefore became effective on November 19. By its express terms, Section 2 of Article VI is self-executing. The provisions amending Section 1 and repealing Section 2a are likewise self-executing and become operative without further legislation. Att'y. Gen. Op. S-146, supra. All statutes in conflict with these constitutional provisions are now superseded.

In answer to your second question, the amendment does not make any distinction between members of the regular military establishment of the United States and members of the National Guard, reservists, or draftees. Previously, the members of the regular military establishment were disfranchised, while the other groups were not. Under the new amendment, the provision in Section 1 of Article VI disqualifying members of the regular military establishment has been omitted, and no person is now disqualified as an elector by reason of his military status. However, a provision has been added to Section 2 of Article VI which reads:

> " . . . Any member of the Armed Forces of the United States or component branches thereof, or in the military service of the United States, may vote only in the county in which he or she resided at the time of en- tering such service so long as he or she is a member of the Armed Forces."

Formerly, National Guardsmen, reservists, and draftees in active service could vote at the place of their legal residence at the time of voting (pro- vided they had resided within the State for one year and within the county for six months) without regard to the place of residence at the time they entered service. Active members of the regular establishment could not vote at all. Now, all these groups are qualified electors if they meet other requirements, but none of them may vote anywhere in Texas except in the county where they resided when they entered service. If a person in mili- tary service changes his legal residence to some place other than the county in Texas in which he resided at the time he entered service, he cannot vote in this State.

Throughout this opinion the term "residence" means legal residence as distinguished from actual residence.

The constitutional amendment does not change the rules for determining what place is the legal residence of the voter, nor does it mean that in all circumstances a person in military service will be enti- tled to claim a voting residence in the county of which he was a resident at the time he entered service. Place of residence is still to be deter- mined in the same way that it has always been. Absence from the county or State for the purpose of performing military service does not of itself cause a loss of residence, but it is possible for a person to abandon his

old residence and acquire a new residence during time of service. Tex. Const. Art. XVI, Sec.9; Clark v. Stubbs, 131 S.W. 2d 663 (Tex. Civ. App. 1939); Struble v. Struble, 177 S.W. 2d 279 (Tex. Civ. App. 1943); Pettaway v. Pettaway, 177 S.W. 2d 285 (Tex. Civ. App. 1943); Robinson v. Robinson, 235 S.W. 2d 228 (Tex. Civ. App. 1950); 15 Tex. Jur. 715, Domicile, Sec. 6. If he does so, and thereby changes his residence to some other county, he loses his right to vote in this State while he continues in service, unless he re-establishes his residence in the county in which he resided when he entered service. Further, no person who entered service as a resident of another State may acquire a voting residence in Texas while he is in service.

It is our opinion that the restriction to voting in the county of residence at the time of entering service applies only to persons who are on extended active duty. Members of the National Guard and reservists who are not on extended active service and retired military personnel are not subject to this restriction. Further, "county of residence at the time of entering such service" means the county in which the person resided at the time he began his current active service. To illustrate: A person, while residing in County A, joins one of the reserve components but does not go into active service. He later moves to County B. After he has fulfilled the length of residence requirement, he may vote in County B; in fact, he could vote nowhere else. While living in County B, he is called into active service. During this time his place of voting is in County B, the county in which he resided when he went into active service. After his release from that tour of duty, he changes his residence to County C. His place of voting is in County C so long as he continues to live there. If he is again called into active service while living in County C, that is the place where he will vote.

Your third question concerns the payment of the poll tax by persons in military service. They are subject to payment of a poll tax to the same extent and in the same manner as all other residents of the State. Heretofore, by virtue of Section 2a of Article VI, qualified electors in military service were not required to pay the poll tax as a condition precedent to voting during time of war and for a certain period after its termination, but the recent amendment repealed this section of the Constitution. Hereafter, all persons in military service must pay a poll tax before February 1 in order to vote, unless they come within one of the exemptions. If they are exempt under the general law, they must comply with the requirements relating to obtaining exemption certificates.

If a person is subject to the poll tax, he owes it in the county of his legal residence on the first day of January preceding its levy. Linger v. Balfour, 149 S.W. 795, 805 (Tex. Civ. App. 1912); McCharen v. Mead, 275 S.W. 117 (Tex. Civ. App. 1925). It should be noted that liability to the poll tax is not limited to qualified electors. It is levied against all residents between the

ages of 21 and 60 years,[1] regardless of whether they are qualified electors. Ordinarily, a person in military service continues to maintain his legal residence at the place where he resided when he entered service. In that case, he is subject to payment of the poll tax in that county, and he may vote in that county if he is otherwise qualified. However, if he should happen to change his residence to some other county during military service, he would be subject to payment of the tax in the county of his new residence; but payment of the tax would not entitle him to vote in the county of his former residence, nor could he vote in the county of his new residence. And, of course, voluntary payment of the tax in the county of his former residence would not entitle him to vote in that county.

This brings up the question of the form of the poll tax receipt to be issued to persons in military service. They should be issued the regular receipt form and should be placed on the poll tax rolls in the same manner as other poll tax payers. In the few instances where persons change their residence during military service, the regular receipt form will still be used, even though the holder cannot vote on it unless he is released from active service. As already pointed out, there are other instances in which poll tax holders are not entitled to vote, yet the statute makes no provision for issuance of a special form of receipt except where the taxpayer is an alien or where the tax is paid after January 31. Arts. 5.12 and 5.14, Vernon's Texas Election Code.

In answer to your fourth question, you are advised that the recent amendment does not make any change in the poll tax laws. The tax is levied only on residents between the ages of 21 and 60 years. Art. 5.09, Vernon's Texas Election Code. The state poll tax is still $1.50, and counties may levy a tax not to exceed 25 cents. Art. 7046, V.C.S. Members of the National Guard will still pay the constitutional state tax of $1.00 but will be entitled to exemption from the balance of the tax upon compliance with Article 5841, V.C.S.

## SUMMARY

The constitutional amendment relating to voting by persons in military service, adopted on November 2, 1954, became effective on November 19, 1954. The amendment is self-enacting and supersedes all conflicting statutes.

The amendment removes the voting disqualification against members of the regular military establishment.

---

[1] Certain classes within these age limits are exempt from the 50-cent statutory part of the state tax and from county and city poll taxes, but all persons between 21 and 60 are liable for the constitutional $1.00 tax. Tondre v. Hensley, 223 S.W. 2d 671 (Tex. Civ. App. 1949); Art. 5.09, Vernon's Texas Election Code.

All persons in military service are now qualified e-lectors if they meet other constitutional requirements. However, a person in military service may vote only in the county in which he resided at the time he entered service. This restriction applies only to persons on extended active duty; it does not apply to members of the National Guard and reservists who are not on extended active duty.

While absence from one's place of residence during military service does not of itself cause a loss of residence, it is possible for a person to abandon his old residence and acquire a new one while he is in service. If he does so, and thereby changes the county of his residence, he cannot vote so long as he continues in service, unless he re-establishes his legal residence in the county in which he resided when he entered service.

The amendment repealed Section 2a of Article VI of the Constitution of Texas, which waived payment of the poll tax by military personnel as a condition precedent to voting in time of war and for a certain period after its termination.

Voters in military service must now comply with the laws relating to payment of poll tax and to obtaining exemption certificates to the same extent and in the same manner as civilian voters. The regular receipt form should be used for their poll tax receipts.

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

APPROVED:

John Atchison
Reviewer

Robert S. Trotti
First Assistant

By _____
Mary K. Wall
Assistant